UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

JOSEPH KRUPPENBACHER,

                                        Plaintiff,

        v.                                                      9:16-CV-1436
                                                                (BKS/TWD)

ANTHONY J. ANNUCCI, et. al.,

                                        Defendants.

─────────────────────────────────

APPEARANCES:

JOSEPH KRUPPENBACHER
09-A-2532
Plaintiff, pro se
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

BRENDA K. SANNES
United States District Judge

**DECISION AND ORDER**

**I.      INTRODUCTION**

        The Clerk has sent to the Court for review a pro se civil rights complaint filed by

plaintiff Joseph Kruppenbacher ("plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"),

asserting claims arising out of his confinement in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS").  Dkt. No. 1 ("Compl.").

Plaintiff, who has not paid the statutory filing fee, seeks leave to proceed in forma pauperis.

1

Dkt. No. 10 ("IFP Application").[1]  On April 6, 2017, plaintiff filed a motion seeking to replace

the original complaint with a new complaint.  *See* Dkt. No. 14.  Plaintiff's motion is granted.

The complaint filed on April 6, 2017 shall be deemed the operative pleading.[2]

## II.    IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal

court without prepayment of the filing fee that would ordinarily be charged."  *Cash v.*

*Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  Upon review

of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient

economic need and filed the inmate authorization form required in the Northern District of

New York.  Plaintiff's IFP application (Dkt. No. 10) is granted.[3]

## III.    INITIAL SCREENING

Having found that plaintiff meets the financial criteria for commencing this action in

forma pauperis, and because plaintiff seeks relief from an officer or employee of a

governmental entity, the Court must consider the sufficiency of the allegations set forth in the

complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.  Section 1915(e) of Title 28 of the

United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the

---

[1]    On December 6, 2016, the Court administratively closed this case due to plaintiff's failure to submit a certified IFP Application with an Inmate Authorization Form.  Dkt. No. 5.  On February 21, 2017, plaintiff submitted a complete IFP application and Inmate Authorization Form.  Dkt. Nos. 10, 11.

[2]    The Clerk of the Court is directed to create a separate docket entry for the complaint (Dkt. No. 14-1).

[3]    Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[4]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

---

[4]      To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV.    SUMMARY OF THE COMPLAINT

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a

procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

The incidents that form the foundation for this complaint occurred while plaintiff was confined at Clinton Correctional Facility ("Clinton C.F."). *See* Compl., *generally*. In a fifty-seven page complaint, plaintiff alleges that he was the victim of various constitutional violations that occurred during a two-year time period, from December 2013 until September 2015. *See id.* Plaintiff names approximately one hundred and eighty defendants, including one hundred and forty-one John Doe Correctional Officers ("John Doe C.O."), seven John Doe Sergeants ("John Doe Sgt.") and two Jane Doe Correctional Officers ("Jane Doe C.O.").[5] *See id.* For a more complete statement of plaintiff's claims, reference is made to the complaint.

## V.    ANALYSIS

## A.    Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263,

---

[5]        Plaintiff also asserts a cause of action against D. Lucia ("Lucia"). The Clerk of the Court is directed to amend the docket report to add Lucia as a defendant herein.

2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

Plaintiff names Anthony Annucci ("Annucci") and Karen Bellamy ("Bellamy") as defendants in the caption and the list of parties. Compl. at 1. These defendants however, are not referenced anywhere in the body of the complaint. In the absence of factual allegations sufficient to plausibly suggest that these defendants were personally involved in conduct that violated plaintiff's constitutional rights, the complaint fails to state a cognizable claim against them. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb.20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint). Accordingly, plaintiff's claims against the aforementioned defendants are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

Plaintiff also names John Doe C.O. # 16, 22, 27, 31, 40, 47, 54, 59, 63, 71, 120, 132, and C.O. W. Giddings III ("Giddings") as defendants herein. Compl. at 2, 3-7. Plaintiff claims that Giddings escorted him to mental health on October 3, 2014. *Id*. at 21. Plaintiff alleges that John Doe C.O. # 71 "detained" him at the head of the gallery of Nine Company for several minutes. *Id*. at 24. With respect to the remaining aforementioned John Doe officers, plaintiff summarily claims that these officers were "involved" in incidents or ordered plaintiff

6

"upon the wall" for pat frisks. *Id*. at 15, 16, 17, 21, 22, 23, 24, 28, 40, 43. In the absence of any facts suggesting that these defendants were involved in any conduct that violated plaintiff's constitutional rights, plaintiff's claims against these defendants are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief can be granted.

## B.    Threats and Verbal Harassment

"Courts in the Second Circuit have consistently held that [m]ere threats, verbal harassment or profanity, without any injury or damage, are not actionable under Section 1983." *Justice v. McGovern*, No. 11–CV–5076, 2012 WL 2155275, at *3 (E.D.N.Y. June 12, 2012). Here, plaintiff contends that John Doe C.O. #17, 18, 19, 38, 46, 48, 49, 50, 51, 64, 65, 66, 79, 80, 81, 83, 98, 106, 107, 118, 119, 125, 126, John Doe Sgt. # 5, C.O. B. Gerrand ("Gerrand"), C.O. M. Sweet ("Sweet"), C.O. J. Cook ("Cook"), C.O. J. Criuse ("Criuse"), and C.O. Mussen ("Mussen") verbally harassed and threatened him. *See* Compl. at 15, 17, 18, 22, 23, 24, 27, 28, 33, 35,36, 40, 41. Plaintiff does not allege that he sustained any physical injury as a result of threats or verbal harassment by the aforementioned defendants. Consequently, plaintiff's claims related to threats and verbal harassment against the aforementioned defendants are dismissed for failure to state a claim for relief.

Plaintiff also contends that John Doe C.O. #3, put a knife against his lower back during three pat frisks. *Id*. at 16, 17. Plaintiff does not allege that he sustained any physical injury as a result of those three incidents. Thus, plaintiff's claims against John Doe C.O. #3 related to threatening behavior are dismissed for failure to state a claim for relief. *See Nelson v. Herdzik*, 559 F.Supp. 27, 28 (W.D.N.Y. 1983) (dismissing § 1983 claim against

officer who threatened the plaintiff with a knife).

## C.    Eighth Amendment Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

### 1.    Excessive Force

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases—not whether a certain quantum of injury was sustained.").

"To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano*, 998 F.2d at 105).

      **a.**    **Claims Against Sgt. R.G. Wood ("Wood"), C.O. Bear ("Bear"), C.O. M. Boynton ("Boynton"), Cook, C.O. T.W. Tamer ("T.W. Tamer"), C. O. N. Martin ("N. Martin"), John Doe C.O. # 41, 42, 43, 44, 67, 68, 69, 70, 72, 73, 74, 75, 84, 85, 86, 87, 107, 112, 113, 114, 115, 116, 128, 129, 130, and 131**

In the complaint, plaintiff alleges that the aforementioned defendants violated his Eighth Amendment right to be free from cruel and unusual punishment with the use of excessive force during the following incidents:

- On December 1, 2013, M. Boynton struck plaintiff several times with a baton while plaintiff was sleeping. Compl. at 12.

- On October 3, 2014, in the hallway by the door to the North Yard, John Doe C.O. # 41, 42, 43, and 44 grabbed plaintiff by the throat, choked him, and attempted to break his finger. Compl. at 21. Defendants pulled plaintiff's arms up behind his back and slammed his head into a wall. *Id*. Plaintiff sustained a cut to his forehead. *Id*.

- On December 31, 2014, as plaintiff was leaving the West Mess Hall after the second meal, plaintiff was assaulted by John Doe C.O. # 67, 68, 69, 70. Compl. at 24. The defendants pulled on plaintiff's beard, tried to break his finger, and kicked him several times. *Id.*

- On January 9, 2015, as he came out of mess hall, plaintiff was assaulted by CO John Doe # 72, 73, 74 and 75 during a search. Plaintiff was struck in the genitals

more than once and his beard was yanked on several times. Compl. at 24-25.

- On March 23, 2015, in the hallway by the door to the North Yard, John Doe # 84 kicked plaintiff, punched him, and used plaintiff's hooded sweatshirt to choke and hold him. Compl. at 28. J. Cook, T.W. Tamer, N. Martin, and John Doe # 85, 86 and 87 were also involved. *Id*.

- On June 8, 2015, plaintiff was assaulted by John Doe C.O. # 112, 113, 114, 115, and 116. Compl. at 37-38. The officers lifted plaintiff off of the ground by one leg and struck him several times. *Id*. at 38. The officers jumped on top of him and hit him several times. *Id*.

- On August 2, 2015, plaintiff was placed in the control room for the H-Block. Compl. at 41. Wood grabbed plaintiff's beard and "yanked" plaintiff's head back and forth. *Id*. Plaintiff felt as if he was choking. *Id*. at 42. Plaintiff was picked up, by his beard, struck in the back of the head and thrown out of the room. *Id.* John Doe # 107, 128, 129, 130 and 131 "took an active part in the threatening and/or assaulting." Compl. at 42.

- During a pat frisk on August 6, 2015, Bear struck plaintiff in the face with a handheld scanner, causing damage to his teeth and other injuries. Compl. at 43.

With respect to these incidents, plaintiff has identified the time, location, amount of force used, and individuals involved in the alleged assaults. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against these defendants survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

**b. Claims Against John Doe C.O. # 4, 5, 6, 9, 11, 36, 55, 56, 57, 60, 61, 62, 121, 122, 123, 124, 127, C.O. T. Collins ("Collins") Mussen, Jane Doe #1, and C.O. D. Butchino ("Butchino")**

10

A different conclusion is reached however, with respect to the aforementioned defendants.  In the complaint, plaintiff refers to incidents involving these defendants with vague and general allegations that lack facts related to amount of force exerted, the type of forced used, or which defendant applied force.  Plaintiff does not allege that he suffered injury as a result of any incident involving the aforementioned defendants.  Plaintiff has alleged individual instances in which he was hit, kicked, punched or shoved, without any further detail.  *See* Compl. at 13, 14, 17, 18, 33.  However, "the Eighth Amendment's prohibition against cruel and unusual punishment does not extend to 'de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'"  *Wright v. Goord*, 554 F.3d 255, 269 (2d Cir. 2009) (quoting *Hudson*, 503 U.S. at 10).  Plaintiff also alleged that the aforementioned defendants "physically abused" or "assaulted" him without any further detail.  *See* Compl. at 13, 15, 17, 23, 25, 40, 41, 42.  As presently plead, these allegations fail to plausibly suggest that the aforementioned defendants used excessive force.  *See Blyden*, 186 F.3d at 262-63; *see also Green v. McLaughlin*, 480 F. App'x 44, 49 (2d Cir. 2012) (holding that while the plaintiff "characterizes his encounter with the officers as an 'attack,' he has not alleged facts supporting a reasonable inference that the officers either used excessive force or acted either sadistically or maliciously"); *see also JCG v. Ercole*, No 11 Civ. 6844, 2014 WL 1630815, at *24 (S.D.N.Y. April 24, 2014) (dismissing the plaintiff's excessive force claim based upon the allegation that he was "physically abused" by a defendant without adequate, detailed factual allegations), *report and recommendation adopted by* 2014 WL 2769120 (S.D.N.Y. June 18, 2014).

Accordingly, plaintiff's Eighth Amendment claims against the aforementioned defendants are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c.    Aggressive Pat Frisks

"[C]onducting pat frisks on prisoners is a necessary procedure to ensure safety and security of prisons, and correction officers are authorized to 'conduct random pat frisks on free movement inmates going to or coming from services and programs' pursuant to DOC policy." *Tavares v. City of New York*, No. 08 Civ. 3782, 2011 WL 5877550, at *6 (S.D.N.Y. Oct. 17, 2011).  Allegations of forceful pat frisks, without more, do not give rise to an Eighth Amendment violation.  *See id.; see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (holding that aggressive pat frisks, an attempt to hit, and pushing or grabbing the plaintiff did not rise to a constitutional claim); *see Vogelfang v. Capra*, 889 F.Supp.2d 489, 507 (S.D.N.Y. 2012) (finding that where the plaintiff alleged "only a degree of roughness that is common in prison contexts, and has not claimed a lasting or even fleeting injury resulting from the defendant's conduct, courts in this circuit have routinely held that such conduct is insufficiently serious to support an Eighth Amendment claim").

Plaintiff claims that while he was being searched on December 22, 2014, John Doe # 55, 56, 57 and Jane Doe #1 "deliberately struck him in the genitals more than once and harassed" him, without identifying which struck him genitals.  Compl. at 23.  Plaintiff similarly claims that during a pat frisk on July 11, 2015, "he was harassed, verbally abused and struck in the genitals more than once," by John Doe #2, 121, 122, 123 and 124, without identifying which officer(s) struck his genitals.  Compl. at 40.  Plaintiff also alleges a search that went

"way beyond" a pat frisk without alleging any specific conduct by John Does 133, 134, 135 and 136.  Compl. at 43.  Plaintiff does not contend that he suffered any injury as a result of any "aggressive" pat frisk.  As presently plead, the complaint does not identify individual defendants' conduct and/or use of force during any pat frisk that rose to the level of a constitutional violation.  Accordingly, plaintiff's Eighth Amendment claims related to pat frisks against John Doe C.O. # 2, 23, 24, 25, 29, 30, 32, 33, 34, 55, 56, 57, 121, 122, 123, 124, 133, 134, 135, 136, Jane Doe #1, and Jane Doe #2 are dismissed without prejudice.

## 2.     Failure to Protect

Prison officials are required to take reasonable measures to guarantee the safety of inmates in their custody.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1970).  The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation.  *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985).  "Failure to intercede results in liability where an officer observes excessive force being used or has reason to know that it will be."  *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).  In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew of and consciously disregarded that risk."  *Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer*, 511 at 837).  In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety.  *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

In the complaint, plaintiff claims that on March 15, 2014, John Doe C.O. # 9 punched

plaintiff in the back while C.O. Remy Jr. ("Remy") was present.  Compl. at 14.  Plaintiff also

alleges that Remy was present on August 2, 2014 when Butchino punched and shoved

plaintiff near the visitation room.  *Id*. at 18.  Similarly, plaintiff asserts that on July 7, 2014,

while he was being escorted to medical by John Doe Sgt. #1, John Doe C.O. #36 "hit"

plaintiff in the back and knocked him to the ground.  *Id*. at 17.  As discussed *supra*, plaintiff's

excessive force allegations against Butchino, John Doe C.O. # 9 and 36 are dismissed for

failure to state a claim.  Thus, plaintiff's failure-to-protect claims against Remy and John Doe

Sgt. #1 are also dismissed for failure to state a claim.  *See Lin v. County of Monroe*, No. 10-

CV-6474, 2014 WL 7202153, at *17, n. 8 (W.D.N.Y. Dec. 8, 2014) (citing *Claiborne v.*

*Blauser*, No. 10-CV-2427, 2013 WL 1384995, at *5 (E.D.Cal. Apr. 4, 2013)) ("[a] defendant is

liable for failing to intervene only where there has been an underlying constitutional violation

warranting intervention.").

### 3.    Sexual Assault

Plaintiff alleges that on February 4, 2015, during a pat frisk, John Doe C.O. #78 put

his hands inside plaintiff's pants and "mov[ed] his genitals around."  Compl. at 26.  "Because

sexual abuse of a prisoner by a corrections officer may constitute serious harm inflicted by

an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable

as Eighth Amendment claims."  *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).  "A

corrections officer's intentional contact with an inmate's genitalia or other intimate area, which

serves no penological purpose and is undertaken with the intent to gratify the officer's sexual

desire or humiliate the inmate, violates the Eighth Amendment."  *Crawford v. Cuomo*, 796

F.3d 252, 256-57 (2d Cir. 2015).  "[A] single incident of sexual abuse, if sufficiently severe or

14

serious, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." *Id.*

As presently plead, the Court finds that plaintiff's Eighth Amendment claim against John Doe #78 survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 4.    Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer*, 511 U.S. at 834. The objective component of an Eighth Amendment deliberate indifference medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2)

the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U .S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. "Non-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.'" *Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999).

Plaintiff claims that on October 3, 2014, after an excessive force incident, John Doe Sgt. #2 escorted plaintiff to "mental health." Compl. at 21. When they arrived, John Doe Sgt. #2 refused to allow plaintiff to receive medical attention. *Id.* Plaintiff also claims that John Doe C.O. #44 denied plaintiff a sick call visit. *Id*. at 21. The complaint is void of any facts suggesting that John Doe Sgt. #2 or John Doe # 44 knew that plaintiff suffered from any serious medical condition or that plaintiff sustained any substantial harm or pain due to the delay in receiving medical attention. *Cf. Hoover v. Hardman*, No. 99-CV-1855 (FJS), 2005 WL 1949890, at *6 (N.D.N.Y. Aug. 15, 2005) (finding an issue of fact where the plaintiff claimed that the defendant delayed his access to medical care with the knowledge that the plaintiff was in extreme pain). Accordingly, plaintiff's Eighth Amendment claims against John Doe Sgt. #2 and John Doe #44 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[6]

### 5.    Conditions of Confinement

---

[6]    Plaintiff's claims regarding medical and dental services in August 2015 do not identify any responsible defendant and are, in any event, similarly insufficient.

The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). "To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs.' " *Id*. (citation omitted). "Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.' " *Brown v. Doe*, No. 13 Civ 8409, 2014 WL 5461815, at *6 (S.D.N.Y. Oct. 28, 2014) (quoting, *inter alia, Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "[The inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted); *Brown v. Eagen*, No. 08–CV-0009 (TJM/DRH), 2009 WL 815724, at *10 (N.D.N.Y. Mar. 26, 2009) (citations omitted); *Midalgo v. Bass*, No. 03–CV–1128 (NAM/RFT), 2006 WL 2795332, at *11 (N.D.N.Y. Sept. 26, 2006) (citations omitted). "Depriving an inmate of food or serving him

contaminated food may constitute a violation of the Eighth Amendment." *Moncrieffe v. Witbeck*, No. 86-CV-253 (NAM), 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (citing *Robles*, 725 F.2d at 15).

With respect to the subjective element, plaintiff must "demonstrate that the defendants imposed those conditions with 'deliberate indifference.' " *Jolly*, 76 F.3d at 480 (citation omitted). "To constitute deliberate indifference, '[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.' " *Walker*, 717 F.3d at 125 (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

Here, plaintiff alleges that on February 28, 2015 and March 15, 2015, John Doe C.O. #82 served plaintiff "spoiled" kosher meal trays. Compl. at 27. Plaintiff has not alleged that he ingested the spoiled food or any facts that satisfy the objective or subjective prong of the Eighth Amendment analysis. Plaintiff's allegations against John Doe C.O. #82 do not rise to the level of an Eighth Amendment violation and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Plaintiff asserts additional claims related to his meals against various John Doe defendants. Plaintiff alleges that on December 25, 2013, John Doe C.O. #2 denied plaintiff the "third meal of the day." Compl. at 12. Plaintiff also asserts that June 1, 2015, while his block was on "lock down," John Doe C.O. #104 and 105 denied plaintiff the first two meals of the day. *Id.* at 35. These allegations do not satisfy the objective prong of the Eighth Amendment standard. *See Benitez v. Locastro*, No. 9:04-CV-423, 2008 WL 4767439, at *6 (N.D.N.Y. Oct. 29, 2008) (dismissing "meal deprivation claims [that] do not involve more than

18

one missed meal on any given day"); *Jean-Laurent v. Los*, No. 12-CV-132S, 2015 WL 1015383, at *9 (W.D.N.Y. March 9, 2015) ("[C]ourts within the Second Circuit have consistently held that the deprivation of two meals is de minimis and, thus, insufficient to establish a deprivation creating a serious danger to an inmate's health to support an Eighth Amendment claim.") (collecting cases).

Similarly, the complaint contains additional facts suggesting that on several other occasions, from December 2013 through June 2015, N. Martin, D. Martin, Sweet, and John Doe C.O. # 2, 7, 8, 10, 12, 13, 26, 37, 39, 52, 53, 58, 76, 93, 94, 95, 96, 97, 104 and 105 refused to open plaintiff's cell thereby preventing him from going to the mess hall for meals. Compl. at 13, 14, 16, 17, 20, 22, 23, 25, 32, 35.  No officer above is alleged to have failed to opened the cell on more than one occasion, and these allegations of individual instances of failing to open his cell are insufficient to satisfy the subjective element of the Eighth Amendment analysis.

Accordingly, plaintiff's Eighth Amendment claims related to his conditions of confinement and missed meals are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**D.    Fourth Amendment and Cell Searches**

Plaintiff alleges that on June 8, 2015, August 4, 2015, August 15, 2015, and August 24, 2015, various defendants "ransacked" his cell.  Compl. at 37, 42, 44, 45.  Plaintiff claims that the searches violated his Fourth Amendment right.  *Id*. at 51.  The Supreme Court has ruled that an inmate does not have a legitimate expectation of privacy in his prison cell.  *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984) ("[T]he Fourth Amendment proscription against

unreasonable searches does not apply within the confines of the prison cell.); *see also Walker v. Keyser*, No. 98 Civ. 5217, 2001 WL 1160588, at *9 (S.D.N.Y. Oct. 17, 2001) ("Even retaliatory searches are not actionable under § 1983."). Consequently, any Fourth Amendment claims based upon cell searches are dismissed without leave to replead.[7]

## E.    Fourteenth Amendment

### 1.    Due Process

#### a.    Property Claim

Plaintiff alleges that Lieutenant Durkin ("Durkin"), Wood, C.O. E. Somell ("Somell"), C.O. B. Bouvia ("Bouvia"), C.O. Colin Pearl ("Pearl"), Remy, and John Doe C.O. # 9, 48, 49, 50, 51, 60, 61, 62, 110, 111, and 137 confiscated, destroyed, or discarded his personal property.  Compl. at 14, 22, 37, 42, 44, 45.  Plaintiff also contends that defendants C.O. Tamer ("Tamer") and Tucker ("Tucker") would not allow him to pack his property for a cell move.  *Id*. at 25.  As a result, plaintiff lost some of his property.  *Id*.  Plaintiff also maintains that John Doe C.O. #141 refused to allow plaintiff to take possession of a typewriter that plaintiff lawfully purchased.  Compl. at 46.

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim.  *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 F. App'x 397, 400 (2d

---

[7]    To the extent that plaintiff attempts to plead an Eighth Amendment claim based upon the cell searches, that claim is also subject to dismissal without prejudice.  "A prisoner maintains the right under the Eighth Amendment to be free from searches which are unrelated to prison needs, but rather calculated to harass."  *Nilsson v. Coughlin*, No. 86 Civ. 7135, 1987 WL 12823, *4 (S.D.N.Y. June 18, 1987).  The complaint lacks sufficient facts to suggest a viable Eighth Amendment claim based upon the cell searches.

Cir. 2009) (An alleged loss of property, "whether intentional or negligent - will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.'") (quoting *Hudson*, 468 U.S. 533).  "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001).  Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir.1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his property in violation of his due process rights).  For the reasons set forth herein, plaintiff's due process claims related to property loss are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.

### b. Disciplinary Hearings

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.  *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996).  "Prison discipline implicates a liberty interest when it imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995));

*Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. Where the plaintiff is confined for "an intermediate duration –between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id*. (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact,

atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133.[8]

### i.    December 5, 2013 Hearing

On December 5, 2013, defendant Lieutenant Miller ("Miller") presided over a Tier III hearing related to a misbehavior report.[9]  Compl. at 12.  At the conclusion of the hearing, Miller found plaintiff guilty and sentenced plaintiff to fifteen days in keeplock with a loss of telephone, commissary, and package privileges.  *Id*.  With respect to this confinement, the duration is "not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer*, 364 F.3d at 66; *see also Davis*, 576 F.3d at 133.  "[T]he loss of phone, package, and commissary privileges does not give rise to a protected liberty interest under New York law." *Smart v. Goord*, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006) (citation omitted).  As presently plead, the complaint is void of any facts establishing how the conditions of plaintiff's keeplock confinement were "more onerous than usual." *See Washington v. Afify,* 2017 WL 73268, at *1 (2d Cir. 2017); *Davis v. State of N.Y.*, No. 99-CV-0307, 1999 WL 1390247, at *3 (W.D.N.Y. Dec. 14, 1999) (holding that 30 days in keeplock with an accompanying loss of telephone, commissary, and package privileges does not give rise to a liberty interest).  Thus, plaintiff has failed to plead

---

[8]    The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short –less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see Davis*, 576 F.3d at 133.  Absent allegations in the complaint that the conditions of confinement were in some way atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

[9]    The complaint lacks facts related to the substance of the misbehavior report or the charges referenced therein.

the existence of a valid liberty interest.

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, the complaint fails to state a claim based upon the Fourteenth Amendment and due process.  The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination.  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563–67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).  The hearing officer's findings must be supported by "some reliable evidence."  *Id*. (citing, *inter alia, Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)).

Here, plaintiff claims that Miller "exhibited extreme prejudice" and found him guilty "against the weight of the evidence," without any other details.  Compl. at 12.  Based upon the aforementioned, plaintiff's Fourteenth Amendment claims related to this disciplinary hearing are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### ii.    April 9, 2014 Hearing

On March 27, 2014, plaintiff received a misbehavior report charging him with three rule violations.[10]  Compl. at 14.  On April 9, 2014, Miller presided over a Tier III hearing related to the misbehavior report and found plaintiff guilty of one rule violation.  *Id*.  Plaintiff

---

[10]    The complaint lacks facts related to the substance of the misbehavior report or the charges referenced therein, other than a violation of having "no i.d. card."  Compl. at 14.

was sentenced to a fifteen day loss of recreation and telephone privileges. *Id.* Plaintiff does not allege that the misbehavior report or disciplinary hearing resulted in any SHU or keeplock confinement. Accordingly, plaintiff has failed to sufficiently plead that Miller interfered with a liberty interest. *See Strasser v. New York*, No. 10-CV-141 (FJS/DEP), 2012 WL 253391, at *3 (N.D.N.Y. Jan. 26, 2012). Plaintiff's Fourteenth Amendment claims related to this disciplinary hearing are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### iii.    August 15, 2014 Hearing

On August 2, 2014, plaintiff was charged with three rule violations.[11] Compl. at 18. As a result, plaintiff was confined to his cell for fourteen days without recreation, commissary, gym, or package privileges. *Id.* On August 15, 2014, defendant Lieutenant J. Kelly ("Kelly") presided over a Tier II hearing with respect to the misbehavior report. *Id.* at 19. Plaintiff was sentenced to a thirty day loss of packages, commissary, recreation and telephone privileges. *Id.* The complaint lacks facts suggesting that plaintiff was sentenced to any disciplinary confinement after the hearing. Thus, for the reasons set forth in Part (E)(1)(b)(ii) *supra*, plaintiff's due process claims against Kelly are dismissed. To the extent that plaintiff seeks to assert a due process claim based upon his pre-hearing confinement, that claim is also subject to dismissal. *See Hynes v. Squillace*, 143 F.3d 653 (2d Cir. 1998) (holding that where inmate did not allege any unusual conditions, pre-hearing confinement in keeplock status for 21 days did not implicate a liberty interest)).

### iv.    April 3, 2015 Hearing

---

[11]    The complaint lacks facts related to the substance of the misbehavior report or the charges referenced therein.

As a result of a use of force incident on March 23, 2015, plaintiff received a misbehavior report charging him with three rule violations.[12]  Compl. at 29.  On April 3, 2015, defendant Lieutenant D. Clancy ("Clancy") presided over a Tier II hearing related to that report.  *Id*.  Plaintiff was found guilty of all charges and sentenced to twenty-five days in keeplock with a loss of commissary, packages, and telephone privileges.  *Id.*  Plaintiff claims that Clancy refused to call a witness and had already made his determination about plaintiff's guilty before the hearing commenced.  *Id*.  For the reasons set forth in Part E(1)(b)(i) *supra*, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### c.   Due Process Claims Against former Superintendent Steven Racette ("Racette") and D. Lucia ("Lucia")

To the extent that plaintiff attempts to assert a due process claim against Racette and Lucia related to disciplinary hearings, those claims are dismissed.  Plaintiff alleges that he forwarded copies of his Article 78 petitions, challenging the outcome of Tier II hearings to Racette and that the disposition from the August 15, 2014 hearing was affirmed by Racette's designee, Lucia.  Compl. at 15, 19.  "Absent an underlying constitutional violation, there can be no supervisory liability[. . . ]" .  *See Murray v. Pataki*, No. 9:03–CV–1263 (LEK/RFT), 2007 WL 956941, at *7 (N.D.N.Y. Mar. 29, 2007).  Having failed to sufficiently plead an underlying constitutional violations related to the disciplinary hearings, plaintiff's due process claims against Racette are dismissed without prejudice for failure to state a claim upon which relief

---

[12]     The complaint lacks facts related to the substance of the misbehavior report or the charges referenced therein.

may be granted.  *See Elek v. Inc. Vill. of Monroe*, 815 F.Supp.2d 801, 808 (S.D.N.Y. 2011) (collecting cases).

### d.      Inmate Grievance Resolution Committee ("IGRC") Hearings

During his confinement at Clinton C.F., plaintiff filed several grievances related to his conditions of confinement.  Plaintiff claims that defendants Sergeant King ("King") and Sergeant Samolis ("Samolis") dismissed him from IGRC hearings related to his grievances.  Compl. at 26, 39.  Plaintiff does not possess the constitutional right to be present during an IGRC hearing addressing a grievance.  *See Anderson v. Duke*, No. 9:04 CV 30(NAM/DEP), 2006 WL 2792735, at *5 (N.D.N.Y. Sept. 27, 2006).  Accordingly, plaintiff's Fourteenth Amendment claims against King and Samolis are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2.      Right to Privacy[13]

"Prison inmates do not shed all fundamental protections of the Constitution at the prison gates."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994) (citing *Turner v. Safley*, 482 U.S. 78, 95 (1987)).  The right to privacy and confidentiality of the status of one's health is a protected interest under the Fourteenth Amendment.  *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977)).  The "interest in the privacy of medical information will vary with the condition."  *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999). "This narrow constitutional right applies in the case of an

---

[13]      Plaintiff does not identify what constitutional amendment(s) support his claim.  Construing the complaint liberally, the Court will analyze plaintiff's claim under the Due Process Clause of the Fourteenth Amendment.

unusual medical condition which, if disclosed unnecessarily, would likely expose an inmate to ridicule, discrimination, or even potentially violence, particularly when the word of the condition is likely to spread through 'humor or gossip[ .]' " *Williams v. Perlman*, No. 06-CV-0936 (GLS/DEP), 2009 WL 1652193, at *11 (N.D.N.Y. Feb. 5, 2009) (citations omitted). "Prison officials can impinge on that right only to the extent their actions are 'reasonably related to legitimate penological interests.' " *Powell*, 175 F.3d at 112.

Here, plaintiff claims that John Doe C.O. #108 violated his right to privacy when he "opened" plaintiff's confidential health information that was clearly marked "Protected Health Information to be Opened by Addressee Only." Compl. at 36. Absent from the complaint are any facts related to plaintiff's medical condition or any facts suggesting that John Doe C.O. #108 disclosed any information related to plaintiff's health to any officer or inmate. Accordingly, plaintiff's Fourteenth Amendment claim against John Doe #108 is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**F.    First Amendment**

**1.    Retaliation**

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in

28

the defendant's decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).  The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act."  *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).  A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted).

During his confinement at Clinton C.F., plaintiff allegedly filed the following grievances:

- In August 2014, plaintiff filed two grievances: one related to an August 2, 2014 incident involving Butchino; and one related to the processing of his outgoing mail (CL-65914-14).  Compl. at 18.

- In September 2014, October 2014, and November 2014, plaintiff filed additional grievances related to his outgoing correspondence.  Compl. at 21, 22.

- In February 2015, plaintiff filed a grievance related to his outgoing mail and a grievance related to his loss of property (CL-66591-15).  Compl. at 26-27.

- In March 2015 and April 2015, plaintiff filed additional grievances related to his outgoing mail. Compl. at 27, 32.

- In May 2015, June 2015, and July 2015, plaintiff submitted grievances related to his outgoing mail and access to the law library. Compl. at 35, 41.

- In June 2015, plaintiff submitted grievances related to an assault and cell search. Compl. at 39.

- In August 2015, plaintiff filed another grievance related to his outgoing mail and a grievance related to an assault in August 2015 and his loss of property. Compl. at 42, 43.

**a. Claims Against Sergeant Hicks ("Hicks"), John Doe Sgt. #3, John Doe C.O. 84, 85, 86, 87, 93, Samolis, Cook, T.W. Tamer, and N. Martin**

Plaintiff alleges that the aforementioned defendants retaliated against him in the following manner:

- On January 11, 2015, Hicks threatened to move plaintiff to a "less desirable" block if he continued to file grievances. Compl. at 25. On January 12, 2015, plaintiff was moved to another block. *Id.*

- On March 23, 2015, after John Doe # 84 assaulted plaintiff, he threatened plaintiff with "far worse" if plaintiff continued to write grievances. Compl. at 28. Plaintiff also alleges that John Doe # 85, 86, 87, Cook, T.W. Tamer, and N. Martin were involved. *Id.*

- On April 3, 2015, John Doe C.O. #93 threatened plaintiff with a physical assault, waved his baton, and warned plaintiff to stop filing grievances. Compl. at 32.

- On April 30, 2015 Plaintiff's identification card was taken and he was unable to get another one until May 18, 2015. On May 13, 2015, Samolis threatened plaintiff never to write another grievance and said that he was never going to get another identification card. Compl. at

30

34.

\-    Plaintiff filed a grievance related to the March 21, 2015
assault by John Doe C.O. #83.  Compl. at 28.  Plaintiff
claims that John Doe Sgt. #3 harassed and threatened
plaintiff for writing the grievance and that the grievance
was not investigated.  *Id.*

At this juncture, plaintiff's retaliation claims against Hicks, John Doe C.O. # 84, 85, 86,

87, 93, Samolis, Cook, T.W. Tamer, N. Martin and John Doe Sgt. #3 survive sua sponte

review and require a response.  In so ruling, the Court expresses no opinion as to whether

these claims can withstand a properly filed motion to dismiss or for summary judgment.

### b.    Claim Against Wood

Plaintiff alleges that on August 2, 2015, after Wood assaulted plaintiff, Wood

threatened to put plaintiff in Unit 14 and stated that he would come to plaintiff's cell at night

with "his men" if plaintiff ever filed another complaint against "his men."  Compl. at 41-42.

During the incident, Wood specifically referred to grievance CL-67007-25.  *Id.*

At this juncture, the Court finds that plaintiff's retaliation claim against Wood survives

sua sponte review and requires a response.  In so ruling, the Court expresses no opinion as

to whether this claim can withstand a properly filed motion to dismiss or for summary

judgment.

### c.    False Misbehavior Reports

It is well settled that "a prison inmate has no general constitutional right to be free from

being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d

Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485

U.S. 982 (1988)); *accord, Pittman v. Forte*, No. 9:01-CV-0100, 2002 WL 31309183, at *5

(N.D.N.Y. July 11, 2002) (Sharpe, M.J.); *see also Santana v. Olson*, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of a false behavior report by a correctional officer does not state a claim for relief.").  The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more such as "retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862.  In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing."[14]  *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (rejecting prisoner's "but for" argument as to guard who prepared misbehavior report but was not involved in Tier III hearing) (citation omitted).

Plaintiff has not alleged that the misbehavior reports were retaliatory; he alleges that they followed assaults, covering up actions by corrections officers.  Compl. at 12, 14, 18, 29. Allegations based on false misbehavior reports are therefore dismissed for failure to state a claim upon which relief may be granted.

### d.    Meals, Services, Privileges, and Identification Card

Throughout the complaint, plaintiff claims that various defendants refused to allow him to attend meals, yard, gym, or the law library.  Compl. at 12, 13, 16, 17, 18, 20, 22, 23, 25, 32, 33, 35, 40.  Plaintiff also claims that various defendants withheld notary services, forms, telephone privileges, commissary, mail, and refused to allow plaintiff to speak with sergeants.

---

[14]  "The only constitutional violation that could occur in this situation is if plaintiff were not provided adequate due process in any proceeding which is based upon the misbehavior report.  In that case, the claim is not based on [the] truth or falsity of the misbehavior report but instead on the conduct of the hearing itself." *Santana v. Olson*, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007).  As discussed *supra*, plaintiff has failed to plead that he suffered any constitutional violation as a result of the hearings related to these misbehavior reports.

*Id.* at 12, 15, 16, 17, 18, 22, 32, 33, 34, 36, 40.  Plaintiff also claims that D. Martin, Gerrand, Cook, T.W. Tamer, Weaver, John Doe C.O # 14, 100, 101, 102, and 103 confiscated, tampered with, refused to issue, and/or destroyed his identification card.  Compl. at 15, 28, 29, 34, 35.  As a result, plaintiff was denied certain services and benefits including yard, commissary, gym, the use of the telephone, and mess hall.  *Id.*  As presently plead, the complaint does not identify the protected conduct involved or any causal connection between the conduct and the adverse action by the defendants.  Accordingly, any retaliation claims related to access to the aforementioned services and benefits are dismissed without prejudice.

### 2.    Legal Mail

In the complaint, plaintiff claims that Mussen read his legal mail on January 6, 2015. Compl. at 24.  Plaintiff also contends that on February 4, 2015, John Doe C.O. # 79 confiscated his legal mail.  *Id*. at 26-27.

"[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted).   A prisoner's right to receive and send mail may, however, be regulated.  *See, e.g., Davidson v. Mann*, 129 F.3d 700, 702 (2d Cir. 1997).   When challenges are brought to such regulations, "courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Davis*, 320 F.3d at 351. "[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Id*. (citation omitted).  To establish a violation, the inmate must show that prison officials "regularly and unjustifiably interfered with the incoming legal mail." *Id.* (holding that

33

two instances of mail interference were insufficient to state a claim because the plaintiff did not allege that the interference with his mail either constituted an ongoing practice of unjustified censorship, caused him to miss court deadlines, or prejudiced his legal actions). Nothing in the complaint suggests a claim of regular mail interference on the part of any defendant.  Although plaintiff repeatedly filed grievances regarding not having received his mail, he failed to allege conduct by any individual defendant.  Accordingly, plaintiff's First Amendment claims related to mail interference are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure state a claim upon which relief may be granted.

### 3.    Access to Courts

The United States Constitution guarantees prisoners a "meaningful right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 830 (1977).  "The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.   Prisoners, however, do not have "an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  In determining whether the provision of legal services, or a law library is adequate, "meaningful access to the courts is the touchstone." *Id*. (quoting *Bounds*, 430 U.S. at 823).  To establish a constitutional violation based on a denial of access to the courts, the plaintiff must show that "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351.

On July 9, 2015, plaintiff filed an Article 78 petition related to the April 2015 hearing.

34

Compl. at 29.   On September 4, 2015, John Doe C.O. #88 refused to allow plaintiff access to the law library. *Id*. Plaintiff attempted to show John Doe # 89 a copy of his Order to Show Cause from the Court but John Doe C.O. # 89 stated that "what the court had to say meant nothing to the facility or him." *Id.* On September 8, 2015, plaintiff gave a copy of his Order to Show Cause and other legal papers to the notary service for copies. Compl. at 30. From September 9, 2015 through September 11, 2015, John Doe C.O.  # 89, 90, 91 and Jane Doe #2 refused to return the aforementioned legal documents. *Id.* at 30. Plaintiff alleges that as a result of these actions, on May 3, 2016, plaintiff's Article 78 petition was dismissed. *Id.* at 31. At this juncture, the Court finds that plaintiff's claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment. *See Collins v. Goord*, 438 F.Supp. 2d 399, 417 (S.D.N.Y. 2006) (holding that an Article 78 petition is "an action for which access to the courts is constitutionally guaranteed").

## G.    Failure to Investigate

Plaintiff attempts to assert a separate constitutional claim against John Doe Sgt. #6 and 7 for failing to investigate the circumstances surrounding the search of his cell on June 8, 2015. Compl. at 37. "[C]ourts within the Second Circuit have determined that '[t]here is... no constitutional right to an investigation by government officials." *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases). Accordingly, these claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## H.    Supervisory Liability Against Racette, Superintendent Michael Kirkpatrick

**("Kirkpatrick"), and Deputy Superintendent of Security, E. Bell ("Bell")**[15]

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[16]

---

[15]     Plaintiff asserts supervisory claims against Racette, Kirkpatrick, and Bell. In portions of the complaint, plaintiff refers to the "Superintendent" without specifying whether he is referencing Racette or Kirkpatrick. The Court notes that in July 2015, DOCCS appointed Kirkpatrick as Superintendent of Clinton C.F. *See* www.timesunion.com/news (last visited April 3, 2017). Accordingly, where the complaint contains allegations against the "Superintendent" after July 2015, the Court will assume that those allegations pertain to Kirkpatrick.

[16]     The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in Colon for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [Iqbal] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing Grullon, 720 F.3d at 139). In any event, as discussed infra, in this case plaintiff has failed to adequately allege personal liability against either defendant even under the *Colon* standards.

"In this circuit, it remains uncertain as to whether a supervisor may be found personally involved in an alleged constitutional violation where the only allegation is that he denied a plaintiff's grievance." *Thon v. Grimshaw*, No. 9:13-CV-0898 (GLS/DEP), 2016 WL 8671925, at *9 (N.D.N.Y. Aug. 26, 2016) (citing *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004)).  District courts have found personal involvement based on the denial of a grievance where the alleged constitutional violation complained of in the grievance was "ongoing [. . . ] such that the 'supervisory official who reviews the grievance can remedy [it] directly.' " *Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009) (citation omitted).

The Second Circuit has cautioned against dismissing claims for failure to allege personal involvement without granting leave to amend where the plaintiff may allege that an official failed to respond to a letter of complaint.  *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. 2013) (a prisoner's letter of complaint sent to a prison warden "at an appropriate address and by appropriate means" would suffice to state facts plausibly suggesting personal involvement).

Plaintiff alleges that Racette, Bell, and Kirkpatrick failed to respond to his grievances, appeals, and letters.  Compl. at 15, 18, 26, 34, 40, 41, 42, 43, 46, and 47.  At this juncture, the Court finds that plaintiff's supervisory claims survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

## I.    State Law Claims

Construed liberally, the complaint asserts causes of action for assault and battery. Compl. at 43.  To the extent that plaintiff attempts to assert state law claims against

defendants in their personal capacity, those claims are barred by New York Correction Law §
24.

New York Correction Law § 24(1) provides:

> No civil action shall be brought in any court of the state,
> except by the attorney general on behalf of the state,
> against any officer or employee of the department,
> which for purposes of this section shall include
> members of the state board of parole, in his or her
> personal capacity, for damages arising out of any act
> done or the failure to perform any act within the scope
> of the employment and in the discharge of the duties by
> such officer or employee.

*See Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996).

Courts look at the following factors to determine whether a defendants' action is within
the scope of employment:

> the connection between the time, place and occasion for
> the act; the history of the relationship between employer
> and employee as spelled out in the actual practice;
> whether the act is one commonly done by any
> employee; the extent of departure from normal methods
> of performance; and whether the specific act was one
> that the employer could have reasonably anticipated.

*Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997) (quotations and citations omitted).

"Claims for damages arising out of a DOCCS employee's act performed within the

scope of his employment may be maintained in the New York Court of Claims as a claim

against the State of New York."  *Heyliger v. Gebler*, No. 06-CV-6220, 496 F.Supp.2d 250,

252 (W.D.N.Y. July 24, 2007).

The test to determine whether the defendants' actions fall within the scope of their

employment is "whether the act was done while the servant was doing his master's work no

matter how irregularly, or with what disregard of the instructions."  *Cruz v. New York*, No. 13-

38

CV-6131, 24 F.Supp.3d 299, 309 (W.D.N.Y. June 6, 2014) (citing *Cepeda v. Coughlin*, 128 A.D.2d 995, 996 (3d Dep't 1987)).

Here, the defendants were on duty in the correctional facilities at the time of the alleged constitutional violations. The complaint lacks any facts to plausibly suggest that defendants acted outside the scope of their employment. *See Ames v. New York Dep't of Corr. and Community Supervision*, No. 12-CV-1487 (MAD/RFT), 2015 WL 4126326, at *14 (N.D.N.Y. March 24, 2015) (the alleged inappropriate filing of misconduct reports and excessive use of force are "not departures great enough to remove [defendant's] actions from within the scope of their employment") (citations omitted); *see also Lewis v. Stanton*, No. 13-CV-1172 (LEK/TWD), 2014 WL 3106566, at *5 (N.D.N.Y. July 7, 2014) (a plaintiff is precluded from seeking damages for assault and battery under New York State common law in federal court). Accordingly, plaintiff's state law claims against defendants in their individual capacities are dismissed for lack of subject matter jurisdiction.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 10) is **GRANTED**;[17] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's inmate authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire

---

[17]    Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

ORDERED that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

ORDERED, that plaintiff's motion to replace the complaint (Dkt. No. 14) is **GRANTED**; and it is further

ORDERED that the Clerk of the Court is directed to create a separate docket entry for the complaint (Dkt. No. 14-1) and to add D. Lucia as a defendant herein; and it is further

ORDERED that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Fourth Amendment claims based upon cell searches; and (2) Fourteenth Amendment due process claim related to access to IGRC hearings; and it is further

ORDERED that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) claims related to verbal threats and harassment; (2) Eighth Amendment excessive force claims against John Doe C.O. # 4, 5, 6, 9, 11, 36, 55, 56, 57, 60, 61, 62, 121, 122, 123, 124, 127, Collins, Mussen, Jane Doe #1, and Butchino; (3) Eighth Amendment excessive force claims related to aggressive pat frisks; (4) Eighth Amendment failure-to-protect claims; (5) Eighth Amendment claims related to deliberate indifference to plaintiff's serious medical needs; (6) Eighth Amendment conditions-of-confinement claims; (7) Fourteenth Amendment due process claims; (8) Fourteenth Amendment privacy claims; (10) First Amendment retaliation claims related to false misbehavior reports, meals, and benefits; (11) First Amendment claims related to tampering with legal mail; (12) constitutional

claims related to failure to investigate; and (14) state law claims;[18] and it is further

ORDERED that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and requires a response: (1) Eighth Amendment excessive force claims against Boynton, Bear, T.W. Tamer, N. Martin, Wood, Cook, and John Doe C.O. # 41, 42, 43, 44, 67, 68, 69, 70, 72, 73, 74, 75, 84, 85, 86, 87, 107, 112, 113, 114, 115, 116, 128, 129, 130, 131; (2) Eighth Amendment claim related to sexual assault against John Doe C.O. # 78; (3) First Amendment retaliation claim against Wood, Hicks, John Doe C.O. # 84, 85, 86, 87, 93, Samolis, Cook, T.W. Tamer, N. Martin and John Doe Sgt. #3; (4) First Amendment claims related to access to courts against John Doe C.O. # 88, 89, 90, 91, and Jane Doe #2; and (4) supervisory claims against Racette, Kirkpatrick, and Bell[19]; and it is further

ORDERED that Annucci; Bellamy; Clancy; Durkin; Kelly; Miller; King; Bouvia; Butchino; Collins; Criuse; Gerrand; Giddings; D. Martin; Mussen; Pearl; Remy; Somell; Sweet; Tamer; Tucker; John Doe Sgt. # 1, 2, 3, 4, 5, 6, 7; Jane Doe #1; and John Doe C.O. # 1 - 13, 15 - 40, 45 - 66, 71, 76-83, 92, 94-100, 102 - 106, 108 - 111, 117 - 127, 132 - 1138; are DISMISSED as defendants herein; and it is further

ORDERED, that upon receipt from plaintiff of the documents required for service of

---

[18]    If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

[19]    Plaintiff is advised that the United States Marshals Service cannot effect service on an unidentified defendant.  In the event that plaintiff wishes to pursue any claims against any John Doe, he must take reasonable steps to ascertain the identity of that defendant.  Upon learning the identity of any unnamed defendant, plaintiff must amend his complaint to properly name him or her as a defendant.  If plaintiff fails to ascertain the identity of any defendant so as to permit the timely service of process, all claims against that individual will be dismissed.

process, the Clerk shall issue a summonses and forward them, along with copies of the

complaint, to the United States Marshal for service upon the remaining defendants.  The

Clerk shall forward a copy of the summonses and complaint to the Office of the Attorney

General, together with a copy of this Decision and Order; and it is further

 **ORDERED** that the Clerk of the Court is direct to provide plaintiff with copies of the

unpublished opinions cited in this Decision and Order; and it is

 **ORDERED**, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the

Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the

Federal Appendix cited in this Decision and Order; and it is further

 **ORDERED**, that a response to the complaint be filed by the remaining defendants, or

their counsel, as provided for in the Federal Rules of Civil Procedure;

 **ORDERED**, that all pleadings, motions and other documents relating to this action

 must bear the case number assigned to this action and be filed with the Clerk of the United

States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S.

Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party to the Court or**

**the Clerk must be accompanied by a certificate showing that a true and correct copy**

**of same was served on all opposing parties or their counsel.  Any document received**

**by the Clerk or the Court which does not include a proper certificate of service will be**

**stricken from the docket.**  Plaintiff must comply with any requests by the Clerk's Office for

any documents that are necessary to maintain this action. All parties must comply with Local

Rule 7.1 of the Northern District of New York in filing motions.  **Plaintiff is also required to**

**promptly notify the Clerk's Office and all parties or their counsel, in writing, of any**

**change in his address; their failure to do so will result in the dismissal of his action**;

and it is further

> **ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on

plaintiff in accordance with the Local Rules.

> Dated: May 18, 2017

Brenda K. Sannes
U.S. District Judge